IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

**RICHARD REED,**                                Civil Action No. 13-cv-00736-RGA

            Plaintiff,

      v.

**N.E.C.A. LOCAL UNION NO. 313
I.B.E.W. PENSION FUND,**

            Defendant.

Martin D. Haverly, Esq. and Stephanie M. Smith, Esq., Wilmington, Delaware, Attorneys for Plaintiff.

Timothy J. Snyder, Esq. and Curtis J. Crowther, Esq., Wilmington, Delaware, Attorneys for Defendant.

MEMORANDUM OPINION

July 28, 2014

ANDREWS, U.S. District Judge:

Before the Court are the parties' motions for summary judgment (D.I. 17, 18), supporting memoranda (D.I. 19, 24), and reply briefs (D.I. 26, 28). For the reasons discussed, the Defendant's motion is granted in part and denied in part and the Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

The Plaintiff enrolled in the Defendant's union pension fund when he became a journeyman wireman in 1989. (D.I. 19 at 9). The Plaintiff remained an union member throughout his career. (*Id.*). In the summer of 2011, the Plaintiff applied for permanent disability benefits, after experiencing severe, chronic back pain for years. (*Id.*). At the time, the Plaintiff had over eighteen years of credited service under the plan and over twenty years in the union. (*Id.*). The Plaintiff began to receive disability pension income in October 2011. (*Id.* at 9-11). Each month, he received $2,362.42. (*Id.* at 9). In May 2012, the Defendant amended the plan, causing the Plaintiff to receive $1,858.46 per month, a $503.96 reduction. (*Id.* at 12). At the January 25, 2012 board meeting, the Defendant amended the disability pension plan's provisions. (D.I. 24 at 8). This amendment created a new calculation of pension amounts for those who started receiving disability benefits after January 1, 2012.

The parties agree that this amendment by itself did not affect the Plaintiff. (D.I. 24 at 8). On February 29, 2012, however, the Defendant considered a resolution that the January amendment would also apply to "disability pensioners who have not yet attained the age 55." (D.I. 20, p. A0111; D.I. 24 at 9). The Defendant approved the change in April 2012. (D.I. 24 at 9). The Defendant notified the Plaintiff of the change on May 18, 2012. (D.I. 20, p. A0113). The new amendment went into effect for the Plaintiff's June 2012 pension payment. (D.I. 24 at 9).

The Plaintiff appealed the reduction of benefits on July 10, 2012. (D.I. 19 at 12). On the same day, he wrote a letter to the Defendant and asked for copies of:

> [All] documents governing the operation of the [Defendant's health and welfare and pension and disability pension fund,] [i]ncluding insurance contracts, collective bargaining agreements, and a copy of the latest annual report (Form 5500 series), and an updated summary plan description. I will also need a summary of the [plan's] financial report. If different, I request a copy of the annual Funding Notice for the [Defendant's plan]. I request the names of the plan trustees, theri attendance record, and the names of the plan's [fiduciaries] and any consultants used, or to be used to create any new [rules] or changes concerning the [Defendant's fund]. I request a copy of any information or data submitted by any trustee, fiduciary, or consultant to be tor that has been used to change or amend the [plan or the fund]. I request a copy of the minutes from the Board of Trustees meetings that took place in 2012, 2011, 2010 and a copy of the minutes from the plan['s] fiduciary meetings containing all relevant information in regard[] to the plan['s] financial status or any need for change concerning pensioners[']/disability pensioners['] benefits. I request a copy of the current terms and conditions of the [plan and the fund] and the terms and conditions of the same fund as they were on October 1, 2011.

(D.I. 20 at A0121). On July 23, 2012, the Defendant sent a reply letter to the Plaintiff acknowledging the appeal and the document requests. (D.I. 19 at 5-6). The Defendant's letter stated that the Board of Trustees would review the requests at its July 25, 2012 meeting. (*Id.* at 13). The Defendant did not consider the appeal until its October 24, 2012 meeting, when it denied the appeal. (D.I. 24 at 10). The Defendant notified the Plaintiff by letter on October 31, 2012. (*Id.* at 10).

On October 10, 2012 (before the board's decision about the appeal), a representative of the Defendant mailed the Plaintiff the current Summary Plan Description (with the amendments to date), the most recent Form 5500 for 2010, the current collective bargaining agreement, and the latest Annual Funding Notice for the plan . (D.I. 19 at 13). Accompanying the documents was a letter that stated that the Defendant was still reviewing the request for the other documents and hoped to have copies of the other documents to which the Plaintiff was entitled soon. (*Id*).
...

2

The Plaintiff received the October 10th letter and documents on October 15, 2012, which was 91 days after his request. (*Id*).

The Plaintiff filed a complaint against the Defendant in April 2013 for the loss of plan benefits (Count I), for the failure to provide requested documents (Count II), for misrepresenting the terms of the plan (Count III), for breaching fiduciary duty by reducing the Plaintiff's benefits (Count IV), and for breaching fiduciary duty by misrepresenting the terms of the plan (Count V). (D.I. 1). Counts III and V were dismissed in October 2013. (D.I. 16). Both the Plaintiff and the Defendant filed motions for summary judgment on October 18, 2013. (D.I. 17, 18).

## DISCUSSION

### A. Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, a court may grant a motion for summary judgment if the movant shows that there are no genuine disputes of materials facts and that the movant is entitled to judgment as a matter of law. Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Courts use a *de novo* standard of review in ERISA benefits decision cases, unless the plan administrator has authority to determine benefits or construe the plan's terms. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the administrator has discretionary authority, the proper standard of review for ERISA cases is the arbitrary and capricious standard.[1] *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). The parties do not dispute that the standard of review is arbitrary and capricious. (D.I. 19 at 19; 24 at 5-6). The arbitrary and capricious standard is a deferential standard of review. *See Firestone*, 489 U.S. at 11 ("A trustee may be given power to construe disputed or doubtful terms, and in such

---

[1] The Third Circuit uses the phrases "abuse of discretion" and "arbitrary and capricious" interchangeably. *See Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 n.2 (3d Cir. 2009).

3

circumstances the trustee's interpretation will not be disturbed if reasonable."). In the Third Circuit, "[a]n administrator's decision constitutes an abuse of discretion only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller v. American Airlines, Inc.*, 632 F.3d 837 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

## B. Decision

The chief issue is whether the Defendant was allowed to reduce the Plaintiff's permanent disability benefits under the terms of the plan. It is clear that Section 9.01 of the plan gives the Defendant discretionary authority over the plan. (D.I. 20, p. A0052). However, the terms of the plan are ambiguous. *See Bill Gray Enters., Inc. Employee Health and Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001) ("Whether terms in an ERISA Plan document are ambiguous is a question of law. A term is 'ambiguous if it is subject to reasonable alternative interpretations.'").

ERISA plans can include both retirement benefits and welfare benefits. Generally-speaking, retirement benefits, once vested, cannot be reduced. Welfare benefits, on the other hand, can be changed. The benefit at issue here has aspects of both a retirement benefit and a welfare benefit. The benefit arises in part from the participant having a disability, and disability benefits are usually considered to be welfare benefits. The benefit arises in part from length of service, and its amount is computed similarly to the way a pension is calculated.

In the plan in which Mr. Reed participated, there are various provisions that shed some light on the nature of the benefit at issue.

Article VI, which is captioned, "Retirement Benefit Eligibility and Amount,"[2] describes four sorts of retirement pensions: the "Normal Retirement Pension," the "Early Retirement

---

[2] I do not rely upon the title, as the Plan states they are "included solely for convenience of reference," and cannot "be construed as part [of the Plan]." Plan § 9.11 (D.I. 20, A0055).

4

Pension," the "Disability Retirement Pension," and the "Widow's Benefit." Plan §§ 6.01, 6.04, 6.06, 6.11 (D.I. 20, A0026, A0028, A0029). The Disability Retirement Pension requires, among other things, a minimum of ten years of service, and its amount is calculated using the "Normal Retirement Pension" amount. Plan §§ 6.06, 6.07 (D.I. 20, A0028-29). In order for a participant to get a "Normal Retirement Pension" or an "Early Retirement Pension," the participant has to file a written application as set forth in Plan § 8.01 (*see* Plan §§ 6.01 & 6.04(a)), but there is no such requirement for obtaining a "Disability Retirement Pension." (*See* Plan §§ 6.06 to 6.10). "In order to receive payment of a pension, the Participant must make written application to become a retired Participant to the Trustees . . . ." Plan § 8.01.

In Article II, a break in service that would otherwise disqualify a person from participation in the Plan does not do so when the participant "[h]as a nonforfeitable right to a retirement benefit as provided in Section 4.02," or "[i]s entitled to permanent and total disability benefits in accordance with Section 6.06," or "[h]as retired and is entitled to retirement benefits in accordance with Section 6.01 or 6.04." Plan § 2.02 (D.I. 20, A0018). The benefits of §§ 6.01 & 6.04 are distinguished as "retirement" benefits while the benefits of § 6.06 are referred to as "disability" benefits.

In Article IV, the Plan discusses "nonforfeitability." "The normal retirement benefit" becomes "nonforfeitable (Vested)" "upon [attainment] of National Retirement Age."[3] Plan § 4.02(a). If the participant's work is governed by a collective bargaining agreement, the participant "shall be Vested, and, therefore, have a nonforfeitable right to receive a retirement benefit, as provided in Article VI, upon completion of ten (10) years of Vesting Service or ten (10) years of Credited Service." Plan § 4.02(b). If the participant's work is not governed by a

---

[3] I believe that "National Retirement Age" is a typo and that it should be read to say "Normal Retirement Age." "Normal Retirement Age" is defined as age 62 or the age at which

5

collective bargaining agreement, then the participant "shall be Vested upon completion of five (5) years of Vesting Service." *Id.* It appears that the provisions of § 4.02(b) are being superseded by those of § 4.02(c), which provide that a participant "who earns Credited Service after January 1, 1997 shall be Vested and, therefore have a nonforfeitable right to receive a retirement benefit, as provided in Article VI, upon completion of five (5) years of Vesting Service or five (5) years of Credited Service." The last subsection of § 4.02 appears to be a "grandfather clause," which provides that participants who "completed at least fifteen (15) years of Credited Service prior to incurring a Permanent Break in Service [before 1976], as defined in Article V . . . shall be Vested and therefore, have a nonforfeitable right to receive a retirement benefit, as provided in Section 6.01 or 6.04." Plan § 4.02(d).

Article VIII, which is lengthy, discusses various aspects of retirement benefit payments. It specifically distinguishes at points between normal retirement pensions and early retirement pensions. Plan §§ 8.04(a)(2)(C) & 8.04(b)(2)(C) (both citing "Section 6.05"); § 8.04(b) (discussing a participant "who has received retirement benefits in accordance with Article VI"). The discussion does not refer to disability retirement pensions.

Upon review of the Plan, and particularly the aforementioned sections, I cannot say that the Plan unambiguously makes a Disability Retirement Pension a vested retirement benefit that cannot be reduced. First, in Article II, the Plan refers to the benefits at issue as disability benefits and not as retirement benefits. Second, the procedure for obtaining a retirement pension is specified; the procedure for obtaining a disability pension is not. Third, the minimum length of service for a retirement pension is five years; for a disability pension, it is ten years. This is significant, not only because it draws a distinction between the two, but because it also undercuts Plaintiff's major argument. Plaintiff's position, boiled down to its essence, is that § 4.02(c)

---

the participant has five years of service, whichever occurs later. Plan § 1.18.

6

unambiguously provides that Mr. Reed has "a nonforfeitable right to receive a retirement benefit, as provided in Article VI, upon completion of five (5) years of [service];" that every benefit in Article VI is a "retirement benefit;" and thus, once he began to receive a disability pension, it could not be reduced. Section 4.02(c) and Article VI do not mesh as cleanly as Mr. Reed suggests. The normal retirement and early retirement benefits of Article VI require a minimum of five years of service; the disability retirement benefits of Article VI require a minimum of ten years of service. Thus, if § 4.02(c) were read as Mr. Reed would have it, it would require that he have a vested right to a disability retirement pension after five years of service, which would contradict the express requirement that there be ten years of service before there is any eligibility for a disability retirement pension.

Since the Plan does not unambiguously support Mr. Reed's position, the Trustees of the Plan have discretion to interpret the Plan. I therefore cannot find that their interpretation is arbitrary and capricious.

There are two other issues to be addressed in relation to Mr. Reed's entitlement to benefits.

First, he relies upon the Summary Plan Description. The Summary Plan Description explains in "An Overview of Your Pension Plan" that "[y]ou have a non-forfeitable right to Plan benefits once you become 'vested.'" (D.I. 20, p. A0068). The Summary Plan Description explains the "Disability Pension" in its "Types of Pensions" section: "If you are totally and permanently disabled and you cannot work, you may be eligible to retire with a disability pension." (*Id.*, p. A0156). The Supreme Court ruled that summary document terms are not the terms of the plan. *See Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1878 (2011). Thus, the Plaintiff may not replace the terms of the plan with the description.

7

Second, Mr. Reed argues that the Trustees did not properly amend the Plan. Section 10.01 of the plan says that the Trustees may amend the plan "in any respect, retroactively or otherwise" as long as the changes do not adversely affect benefits accrued before an amendment. (D.I. 20 at A0056). The plan defines "accrued benefits" as "the retirement benefit a Participant would receive at his Normal Retirement Date." (*Id.* at A0006). Therefore, the Trustees were permitted to retrospectively or prospectively amend the plan as it applied to the Plaintiff's permanent disability benefits.

Therefore, on Counts I and IV, I will grant the Defendant's motion for summary judgment.

Count II alleges a failure to provide timely documents the Plan was obligated to supply. There is no disputed material fact that the Plan did not timely provide the documents. Thus, I consider the five factors set forth in *Gorini v. AMP, Inc.*: (1) bad faith, (2) length of delay, (3) number of requests, (4) documents withheld, and (5) prejudice to party. *See* 94 Fed. Appx. 913, 919-20 (3d Cir. 2004). The Defendant gave Mr. Reed the requested documents 91 days after the request, 61 days late. Considering all the circumstances, including the legislative determination that timely compliance serves the public interest, I believe that an award of penalties is appropriate, but since I do not believe that there was bad faith, and I do not see any particular harm to the Plaintiff from the delay, I believe that $25 per day is an appropriate penalty, and I will therefore award $1525 as a penalty.

A separate order will be entered.